GANNERT v. RUPERT.

(Circuit Court of Appeals, Second Circuit. January 6, 1904.)

No. 47.

1. TRADE-NAMES—TITLES OF PERIODICALS—INFRINGEMENT—INJUNCTION.

A person publishing a magazine under the name "Comfort" has a trade-name in such title, which is infringed by the use of the name "Home Comfort" for a magazine, entitling him to an injunction, without proof of damages.

Appeal from the Circuit Court of the United States for the Southern District of New York.

For opinion below, see 119 Fed. 221.

Appeal from a decree of the Circuit Court for the Southern District of New York, dismissing bill to restrain the infringement of complainant's trade-mark. The Circuit Court accurately described the rival publications as follows:

"The predecessor of the complainant corporation in the year 1888, began the publication of a monthly periodical to which was given the name or title 'Com-

---

¶ 1. Arbitrary descriptive or fictitious character of trade-marks and trade-names, see note to Searle & Hereth Co. v. Warner, 50 C. C. A. 323.

fort.' It is still so known. The name had not been previously used for any other publication and the use thereof since its adoption has been uninterrupted and exclusive by the complainant and its predecessor. Large sums of money have been expended to improve Comfort's appearance and increase its circulation. Its principal readers and subscribers reside in rural localities. On account of the extensive circulation which it has acquired, Comfort is a valuable advertising medium for the sale of articles and proprietary drugs. It obtains for advertising space quite large remuneration. Every issue contains twenty-four pages of four columns each, the size of the page being eleven and one-half by seventeen inches. It publishes short stories contributed by its subscribers, abridged current events, and reproduces pictures of prominent men, with short biographies. Comfort principally aims to attain distinction as a widely circulated monthly periodical among country folk and to satisfy the advertiser. It is published at Augusta, Me. Its name is printed at the head of the title page in red letters horizontally cut by a yellow key, which passes through the letters all on one line. Underneath the title appear in explanation the words, 'The Key to a Million Homes.' The bill, after charging that the defendant intentionally and fraudulently published a monthly periodical, the name or title of which is 'Home Comfort,' invokes the power of this court to restrain defendant from appropriating the word 'Comfort' in connection with the name or title to his periodical.

\* \* \* \* \* \* \* \*

"The price per copy of Home Comfort is five cents, while that of Comfort is twenty-five cents per annum. Its title page is printed in blue; in the center it has an oval picture of a nude infant. Complainant's title page is highly colored, red and yellow, with figures of different colors. Defendant's title page announces that it is published by 'W. F. Ruppert, 114 Fifth Ave., N. Y. City.' It is about half the size of complainant's publication and is devoted entirely to the publication of articles containing suggestions and advice to mothers touching infants' ailments, their nature and hygienic betterment."

Archibald Cox, for appellant.

James D. Fessenden, for appellee.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

COXE, Circuit Judge. This is a trade-mark case pure and simple. It is not a case of unfair competition. It is founded on a technical, common-law trade-mark. With this distinction in mind it is obvious that many of the propositions argued by the defendant are irrelevant. For 15 years the complainant and its predecessors have published a monthly periodical called "Comfort." Under this name a large, lucrative and growing business has been established. A person publishing a newspaper or a magazine may give it a name by which it is known and by which its authenticity is attested. This name is entitled to the same protection as if it were affixed to other articles of merchandise. The purchasing public know it by that name and no other. The name is a badge of origin and genuineness. It is as much a part of the proprietor's property as his counting room or printing press. A rival publisher has no more right to appropriate the name of the periodical than the individual name of its owner. But it is objected that "Comfort" is a standard English word not fanciful or manufactured but descriptive, suggesting the purpose and errand of the paper. It certainly is descriptive, but of what? Surely not of a family newspaper. Some of the synonyms of comfort are consolation, contentment, ease, enjoyment, happiness, pleasure, satisfaction, but would any of these be used by a rational being to describe a monthly journal intended to

circulate in the rural districts? Would the word "ease," for instance, when applied to a newspaper convey to the reading public any accurate information of its errand or purpose or the character of its contents? It is thought not. "Comfort" is, it is true, a common English word free to all, but so are "century," "cosmopolitan," "forum" and "arena." The last two are suggestive of ancient contests, physical and intellectual, but not of a modern literary review. Such words are continually being selected, arbitrarily, to designate publications which in time become known solely by the names so bestowed upon them, and such use is protected by the courts.

The defendant is publishing a monthly paper circulating, in part at least, in the same territory as the complainant's paper and covering a somewhat similar field. He calls his paper "Home Comfort." This is enough to justify the relief prayed for. It is of no moment that the proof fails to show deception, confusion or injury to any marked extent. Such proof is unnecessary where infringement of a valid trade-mark is clearly established. The defendant is using the complainant's property and, as he is acting without color of right, the complainant is entitled to have that use discontinued. If the defendant's contention be correct that actual damage must be proved before an injunction can issue, it follows that if to-morrow a new infringer should commence the publication of a paper with a Chinese copy of the complainant's trade-name on its title page, the court would be powerless to grant relief until the infringement had been carried on long enough to cause actual, provable damage. Equity is not so helpless and impotent. It is the policy of the law to arrest the pirate before he actually makes off with the plunder.

The complainant has waived an accounting. It follows that the decree must be reversed, with costs, and the cause remanded to the Circuit Court with instructions to enter a decree for an injunction restraining the defendant from infringing the complainant's trade-mark.