## WILCOX & WHITE CO. v. LEISER.

### (District Court, S. D. New York. January 10, 1918.)

**Trade-marks and trade-names and unfair competition ⊂⟶61—Trade-mark for self-playing musical instruments held to extend to phonographs in preparation for the market.**

The word "Angelus," registered by complainant as a trade-mark for self-playing musical instruments which it had manufactured and sold for 25 years, during which time its trade-mark had become widely and favorably known, *held* to extend to phonographs which it was preparing to manufacture and sell under such trade-mark, though it had not as yet placed them on the market, and to entitle complainant to protection against the use of the word by defendant in his trade-name and on phonographs which he had recently commenced to make and sell.

In Equity. Suit by the Wilcox & White Company against Frank J. Leiser. On motion for preliminary injunction. Granted.

Mitchell & Allyn, of New York City, for plaintiff.
T. C. Spelling, of New York City, for defendant.

MANTON, District Judge. Plaintiff sues for infringement of trade-mark and for unfair competition, and moves for a preliminary injunction pendente lite restraining the defendant from the use of the word "Angelus" in his trade-mark, the "Angelus Phonograph Co."

Plaintiff manufactures mechanically-operated musical instruments or self-playing musical instruments, for which it has a registered trade-mark "Angelus." This trade-mark has been registered on three occasions. The last certificate shows the registration for mechanical music playing instruments and music sheets therefor. The defendant has recently embarked in the business of manufacturing phonographs and has started in a small way. He says he sold a small number and has spent upwards of $1,500 in advertising. He has applied to the Patent Office for the registration of the word "Angelus" as a·valid trade-mark. Plaintiff has spent upwards of half a million dollars in advertising the trade-mark and has enjoyed a good reputation for 25 years in the manufacture of self-playing musical instruments, using the trade-mark "Angelus." Plaintiff has not made use of this trade-mark in connection with phonographs, but is about to do so, for it has been experimenting for several years to perfect an instrument which, it says, will reach the efficiency worthy of its mark, and states that it makes no pretense of offering for sale to the public, at the present time, phonographs under this mark, although it has done so solely for trial use. The plaintiff is entitled to protection against infringement of this trade-mark in all self-playing instruments which it has placed on the market, and the question here is whether it should be extended to phonographs which it expects to place upon the market as against this defendant.

The defendant places the mark "Angelus" on instruments which he sells and which are not manufactured by him but assembled by

---

⊂⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

him from parts which he purchases. His advertisements, such as plaintiff's Exhibit B, state that the Angelus Phonograph Company is the manufacturer of the famous Angelus phonograph. This was sent out in the form of a circular letter and later in an advertisement in a trade journal, wherein his product was referred to as the famous Angelus instrument. The use of the name was adopted shortly prior to August 1, 1917, and he has done nothing to make the trade-mark "Angelus" famous as applied to musical instruments. On the other hand, the plaintiff has, as the affidavits indicate, made such trademark famous by its advertising and that of its agents. The chief product of the plaintiff seems to have been a player piano, but it now anticipates making a phonograph, using the name "Angelus" as its trade-mark, and as it says, it will be a warranty to its customers that the phonograph will be of the same high grade of make and efficiency as has been the player piano. It therefore is jealous and zealous of the protection of its trade-mark.

As the business of self-playing piano manufacturers has grown in the past years, it seems to be their policy to enter the field of the manufacture of phonographs, and this plaintiff is about to embark in the manufacture of that product. With a reputation thus established, using this trade-mark, it would be inequitable for the defendant to be permitted to use the name "Angelus" in his firm name, for the plaintiff has property rights in said name "Angelus" which should not be infringed. Nor is a court of equity so helpless and impotent to help a plaintiff where the piracy is just started (Gannert v. Rupert, 127 Fed. 962, 62 C. C. A. 594), and the court should interfere where the defendant seeks to get the benefit of plaintiff's reputation and advertising and forestall the extension of his trade. Obviously, the defendant had adopted the plaintiff's identical trade-mark "Angelus" for these reasons, for no other reason is advanced why the name "Angelus" should be used by the defendant. While the phonograph is a different musical instrument, it is a self-playing instrument and is so related to the player piano that the piracy of a well-known trade-mark used in the advertising and sale of a phonograph will fall within the mischief which is intended to be prevented by principles of equity. Using this name upon phonographs, the public would at once conclude that it was the plaintiff's make, and permitting it is to place the plaintiff's reputation in the hands of the defendant and enable him to get the benefit thereof. This the court should not permit. Florence Mfg. Co. v. J. C. Dowd & Co., 178 Fed. 73, 101 C. C. A. 565; Layton Pure Food Co. v. Church & White, 182 Fed. 35, 104 C. C. A. 475, 32 L. R. A. (N. S.) 274.

An injunction will therefore be granted pending the trial of the action.

[In Borden Ice Cream Co. v. Borden's Condensed Milk Co., 3 T. M. Rep. 80, 201 Fed. 510, 121 C. C. A. 200, the United States Circuit Court of Appeals held that an unfulfilled intention on respondent's part to extend its business to ice cream did not entitle it to an in-

junction against one who anticipated its plans, in the use of the name "Borden's" on ice cream. The intimate relation between ice cream, on the one hand, and the numerous milk products of the respondent, on the other, was, in this case, ignored.]